## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **FRANKLIN SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-16-394-HE** |
| | ) | |
| **MANTLE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Franklin Smith, appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging various violations. (ECF No. 1). At issue also is Plaintiff's "Supplement to add Defendants pursuant to Res Judicata." (ECF No. 9). Chief United States District Judge Joe Heaton referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). A review of the complaint has been conducted pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B). Based on that review, it is recommended that the Court: (1) dismiss, with prejudice, all claims against Defendants Prater and Durbin; (2) dismiss, with prejudice, any claim against Defendants Hall and Elliot for monetary damages; (3) dismiss, without prejudice, any claims against Defendant Whetsel for monetary damages and any claims against Defendant Mantle; (4) dismiss, as moot, any claim for injunctive relief against Defendants Whetsel, Hall, and Elliot; (5) deny Plaintiff's request for appointment of counsel; and (6) deny Plaintiff's motion to add Defendants. The

Court should conclude that Plaintiff has stated a valid claim against Defendants Bowein and Baisden.

## I.    SCREENING REQUIREMENT

The Court must review each complaint in which a prisoner seeks redress against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court likewise must review each case brought by a prisoner with respect to prison conditions and each case in which a plaintiff proceeds *in forma pauperis*. 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2). The Court is required to dismiss the complaint or any portion of the complaint that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).

## II.    STANDARD OF REVIEW

The Court must accept Plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Since Plaintiff is proceeding *pro se*, his complaint must be construed liberally. *See id.* at 1218. The Court "review[s] the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (quotations and citation omitted).

A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted). Bare legal conclusions in a complaint, however, are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that although courts construe *pro se* pleadings liberally, courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*).

## III. PLAINTIFF'S CLAIMS AND RELIEF SOUGHT

Plaintiff has named eight defendants in the complaint: Oklahoma County District Attorney David Prater, Oklahoma County Sheriff John Whetsel, Oklahoma City Police Officers Mantle and Stacey Bowein, Oklahoma County Sheriff's Department Captain David Baisden, Oklahoma County Sheriff's Department Deputy M. Durbin, and Oklahoma County District Judges Russell Hall and Lane Elliott.

Plaintiff's claims stem from an allegedly wrongful arrest which he believes was part of a larger conspiracy to extradite him to Virginia. On April 28, 2015, Defendant Mantle arrested Plaintiff for public intoxication, disorderly conduct, and "defrauding an innkeeper." (ECF No. 1:2, 9). Plaintiff alleges that the arrest violated the Americans with Disabilities Act ("ADA") because the conduct for which he was arrested was actually the result of a disability. (ECF No. 1:2, 6). During the arrest, Mr. Smith alleges Officer Bowein used excessive force in violation of the Fourth Amendment which amounted to multiple assaults and caused various injuries. (ECF No. 1:3). Specifically, Plaintiff alleges that Officer Bowein: (1) slammed him against the police vehicle, injuring his back, (2) hit his head on the door frame of the vehicle, and (3) cut the circulation off in his wrists by first using his backpack straps as handcuffs, and then placing handcuffs on him too tightly. (ECF No. 1:3). Plaintiff also alleges that Officer Bowein made derogatory remarks to him during the arrest. (ECF No. 1:3). Mr. Smith alleges that Captain Baisden: (1) verbally threatened Plaintiff and (2) "compelled" Officer Bowein to "rough up and assault" Mr. Smith. (ECF No. 1:2, 3).

Once arrested, Plaintiff was brought before Judge Russell Hall. According to Mr. Smith, Judge Hall violated the Eighth Amendment by denying bond and ordering him to be held at the Oklahoma County Jail where he was subject to "unconstitutional" conditions. (ECF No. 1:4, 7). Regarding conditions at the jail, Mr. Smith stated that he was housed in the "8th floor maximum lockdown unit" with "23 & 24 hour lockdowns," no mattresses, and no laundry pick-up to clean his clothes which were "breeding

bedbugs, scabies, foot fungus and jock itch." (ECF No. 1:3, 7). Plaintiff also alleged that he was forced to sleep on a dirty floor covered with garbage and urine for days without a mattress, which injured his hips, and the showers were filled with gnats and black mold. (ECF No. 1:7). Mr. Smith is suing Defendant Whetsel as the individual responsible for the conditions of the jail. (ECF No. 1:3). Plaintiff also alleges that he was denied his medication while in jail which caused uncontrollable trembling, mental and physical fatigue, dizziness, confusion, headaches, arm numbness, and chest pains. (ECF No. 1:7).

According to the Plaintiff, the arrest was merely a subterfuge to allow officials time to manufacture a "bogus warrant" to extradite him to Virginia. (ECF No. 1:9). Mr. Smith alleges that Judge Lane Elliot manufactured the warrant to prevent Plaintiff from proceeding with federal lawsuits against several government officials. (ECF No. 1:4).

Despite the warrant, Plaintiff contends that Sherriff's Deputy M. Durbin coerced him into signing a waiver of extradition as part of a larger conspiracy plot with other defendants. (ECF No. 1:4). At the extradition hearing, Plaintiff alleges that Judge Elliott: (1) denied bond, (2) had knowledge of the unconstitutional conditions at the Oklahoma County Jail, (3) denied Plaintiff counsel, (4) made disparaging statements, and (5) failed to have the hearing transcribed. (ECF No. 1:4, 8).

Plaintiff does not indicate whether he is suing the Defendants in their official or individual capacities. The undersigned therefore construes the complaint as raising claims against the Defendants in both capacities. *See, e.g.*, *Smith v. United States*, 561

F.3d 1090, 1093, n.2 (10th Cir. 2009). Plaintiff seeks monetary relief against all Defendants and seeks injunctive relief against Defendants Whetsel, Hall, and Elliott. (ECF No. 1:12-13).

## IV.    DEFENDANT PRATER

Mr. Smith sues District Attorney David Prater for "submit[ting] the belated bogus charges against the Plaintiff." (ECF No. 1:3). This claim should be summarily dismissed because the allegations are conclusory.

"Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts, if the court is to determine whether he makes out a claim on which relief can be granted." *Id*. Plaintiff has not described what charges were allegedly "bogus" or why he believes they lacked authenticity. The conclusory nature of this claim is sufficient to dismiss the allegations against Defendant Prater for failure to state a claim.

## V.    DEFENDANT WHETSEL

Mr. Smith names Oklahoma County Sherriff Whetsel as a defendant and argues Defendant Whetsel's liability as follows:

> Because Sheriff Whetsel knew, and if he didn't know, he should have known that the bogus warrant was submitted in color (subterfuge), which apparently looks valid on its face, but in reality is legally insufficient. And with 'preponderance of evidence' the Oklahoma County Jail is unconstitutional violating Plaintiff's guarantee protection against cruel and unusual punishment pursuant to our Eighth Amend: such as bedbugs,

scabbies [sic], no mattresses due to the infestations, and 23 hr./ 24 hr. lockdowns. Among other things.

(ECF No. 1:3). Elsewhere in the Complaint, Plaintiff identifies inhumane conditions at the Oklahoma County Jail including: (1) having to sleep on a garbage and urine covered floor, (2) unavailability of laundry service which allowed his clothing to breed "bedbugs, scabies, foot fungus and jock itch," and (3) showers filled with gnats and covered in black mold. (ECF No. 1:3, 7). Mr. Smith also alleges that while in jail, he was denied his medication which caused uncontrollable trembling, mental and physical fatigue, dizziness, confusion, headaches, arm numbness, and chest pains. (ECF No. 1:7). But he does not specifically identify the individual responsible for the medication denial.

The Court should dismiss any claim regarding Defendant's knowledge of an allegedly "bogus warrant" as it fails to state a claim for a violation of the constitution. Regarding conditions at the jail and a denial of medication, apparently Plaintiff believes that Defendant Whetsel is responsible. But any claim against Defendant Whetsel for monetary damages should be dismissed because Plaintiff failed to allege that Defendant Whetsel was responsible for denying him medication, creating the environment at the jail, or personally participating in any of the alleged deprivations.

## A.    Official Capacity Claims

A claim by Plaintiff against Defendant Whetsel in his official capacity "is essentially another way of pleading an action against the county or municipality []he[] represent[s]." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). In order to sufficiently allege such a claim, Plaintiff must effectively describe "official policy or

custom [that] was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Id.* Plaintiff has not done so here and, accordingly, has failed to adequately state a claim for relief against Defendant Whetsel in his official capacity.

### B.    Individual Capacity Claims

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Here, Plaintiff simply alleges he was deprived of his medication while in jail and describes the conditions at the Oklahoma County Jail, but he does not specifically allege that Defendant was personally involved in causing the conditions, either directly or in a supervisory role. (ECF No. 1:3, 7). Plaintiff must sufficiently plead personal involvement, causation, and state of mind. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013). Mr. Smith has failed to plead any of these three requisites. Thus, the Court should dismiss, without prejudice, any claim for monetary relief against Defendant Whetsel in his individual capacity.

## VI.    DEFENDANT BOWEIN

Plaintiff alleges that Officer Stacey Bowein used excessive force during his arrest by "repeatedly slam[ing] Plaintiff against the cop car, injuring his back, hitting Plaintiff's head on the door trim of the police vehicle, and cutting off his circulation by using his backpack straps as handcuffs and then applying actual handcuffs too tightly. (ECF No. 1:3). Mr. Smith also alleges that Officer Bowein made derogatory statements to

Plaintiff, including: "I'm sick and tired of your poor sorry ass, you stink and smell like shit." (ECF No. 1:3).

First, Plaintiff has no cause of action for the allegedly derogatory remarks. *See Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979) (holding that verbal abuse alone is not actionable under § 1983). But Plaintiff has stated a claim for excessive force during the arrest in violation of the Fourth Amendment.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). The degree of physical coercion that law enforcement officers may use is not unlimited, however, and "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Id.* at 395 (emphasis in original). In defining the parameters of this reasonableness standard, the Court in *Graham* stated:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396. Thus, the excessive force inquiry evaluates the force used in a given arrest against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case. And according to *Graham*, the reasonableness inquiry is objective: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 396-97. Finally, "a claim of excessive force requires some actual injury that is not *de minimis*, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

According to Mr. Smith, Defendant Bowein: (1) repeatedly slammed Plaintiff against the police vehicle, injuring his back, (2) hit Plaintiff's head on the door trim of the police vehicle, and (3) cut off his circulation by fashioning his backpack straps, and then handcuffs, too tightly on Plaintiff's wrists. (ECF No. 1:3). Although the severity of the alleged offense is a factor in evaluating an excessive force claim, a court must also consider officer safety concerns and whether the suspect cooperates or resists. *Graham,* 490 U.S. at 396. By his own admission, Plaintiff was arrested for public intoxication and disorderly conduct. (ECF No. 1:2). Under the circumstances, Officer Bowein may have acted reasonably in effectuating the arrest. But Mr. Smith alleges that he was not combatant during the arrest and at this juncture, the Court has to take the Plaintiff's allegations as true.

Accordingly, the Court should conclude that Plaintiff's allegations are sufficient to state a claim for excessive force during the arrest in violation of the Fourth Amendment.

*See Anderson v. Bruning*, 2007 WL 2137941, at 6 (W.D. Okla. July 23, 2007) (unpublished op.) (Plaintiff's allegations that he was "stomped," "kicked," and "push[ed] hard to the floor" "indicate that greater force was used than would have been reasonably necessary to effect the arrest"); *see also Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) ("In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight.").

## VII. DEFENDANT BAISDEN

Regarding Defendant Baisden, Plaintiff states: "Capt. Baisden charged Plaintiff with public intox & disorderly conduct threatening him to leave Oklahoma City and send Plaintiff to prison for (4) years revoking his suspended sentence and wrongfully placing himself in a Judge's capacity, misusing and abusing his power under color of state law." (ECF No. 1:2). This statement alleges only verbal threats which are insufficient to state a claim under § 1983. *See Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979) (holding that verbal abuse alone is not actionable under § 1983).

Plaintiff also alleges that Defendant Baisden "compelled" Officer Bowein to "rough up and assault" Plaintiff. Although Plaintiff has not stated that Officer Baisden was directly involved in the arrest, he may still be liable under a theory of excessive force. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers

in their presence." *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir. 2008). However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Vondrak,* 535 F.3d at 1210. This query—regarding whether there was sufficient time and ability to intercede—"is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* at 1210. "The liability faced by an officer who fails to intercede where that officer observes or has reason to know that excessive force is being used by another officer is also clearly established." *Asten v. City of Boulder*, 652 F. Supp. 2d 1188, 1204 (D. Colo. 2009) (citing *Vondrak,* at 1210).

Mr. Smith alleges that Defendant Baisden compelled Officer Bowein to assault Plaintiff during the arrest. Taking Plaintiff's allegations as true, Defendant Baisden was presumably in a position to have interceded if Defendant Bowein had exceeded the amount of force necessary to effectuate the arrest. As a result, the Court should conclude that Mr. Smith has stated a valid claim against Defendant Baisden for excessive force during the arrest in violation of the Fourth Amendment.

## VIII. DEFENDANT MANTLE

Mr. Smith alleges that Defendant Mantle violated the ADA by wrongfully arresting Plaintiff for actions which were the result of a disability. (ECF 1:2, 6). This theory fails as a matter of law.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. In order to prove a violation of Title II of the ADA, a plaintiff must demonstrate: (1) he or she is a qualified individual with a disability; (2) he or she was either excluded from participation or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

In *Gohier*, the Tenth Circuit held that a person with a disability may state a claim under the ADA based upon police conduct in an arrest or investigation. *Id.* at 1220–21. The Tenth Circuit discussed two potentially viable theories involving police conduct recognized by other federal courts: the wrongful arrest theory and the reasonable accommodation during arrest theory. Under the wrongful arrest theory, law enforcement may be liable for arresting an individual after incorrectly perceiving the effects of the individual's disability as illegal conduct. *Id.* Under the reasonable accommodation during arrest theory, law enforcement may be liable if they fail to reasonably accommodate a person with a disability during the course of an investigation or arrest for a crime unrelated to that disability, thereby "causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* However, while the Tenth Circuit clarified that "a broad rule categorically excluding arrests from the scope of Title II . . . is not the law," the court stated that it remained

"an open question in this circuit whether to adopt either or both [theories]." *Id.* at 1221.

Here, Mr. Smith alleges liability under the wrongful arrest theory, arguing that Defendant Mantle "misperceived Plaintiff's disability as illegal conduct while desperately seeking mental health treatment at O.U. Hospital Emergency room during a psychotic episode wrongfully arresting him under color of state law when he should have been rushed to the crisis unit, rather Mantle violated our Americans with Disabilities Act." (ECF No. 1:2).

The Court should conclude that Mr. Smith has not stated a claim under the "wrongful arrest theory" because he has failed to allege that he is a "qualified individual with a disability." The ADA requires that a person establish that he has or is regarded as having "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The Tenth Circuit Court of Appeals has held that the "substantially limits" portion of a disability claim must indicate how a person's disability affects him as "compared to the average person in the general population" and that "courts must take into account: (1) the nature and severity of the impairment; (2) the expected duration of the impairment; and (3) the permanent or long term impact resulting from the impairment." *Sanchez v. Vilsack,* 695 F.3d 1174, 1178 (10th Cir. 2012) (citations omitted). Mr. Smith has failed to provide any details concerning his alleged disability, only that he has one. Absent any allegations that he is a member of a protected class, Mr. Smith's ADA claim against Defendant Mantle must be dismissed.

But because the pleading defect may be remedied, the dismissal should be without prejudice.

However, Plaintiff should keep in mind that even if he is able to establish entitlement to protection under the ADA, he may not succeed on a theory of wrongful arrest if the evidence establishes that his conduct was unlawful and warranted a police response. *See J.H. ex rel. J.P. v. Bernalillo County*, 2014 WL 3421037, at 50 (D.N.M. July 8, 2014) (unpublished op.) (rejecting an ADA claim based on the wrongful arrest theory noting, "Even assuming she battered her teacher as a result of her disability, J.P.'s conduct warranted a police response because her conduct was unlawful."); *Buben v. City of Lone Tree*, 2010 WL 3894185, at 9-11 (D. Colo. Sept. 30, 2010) (unpublished op.) (granting summary judgment on the plaintiff's ADA claim based on a wrongful arrest theory finding, "Even assuming Plaintiff's conduct was the result of a disability, his conduct warranted a police response because his conduct was unlawful."). At this juncture, Plaintiff's claim against Defendant Mantle for a violation of the ADA based on wrongful arrest should be dismissed without prejudice for failure to state a claim.

## IX.    DEFENDANT DURBIN

Plaintiff's alleges that Defendant Durbin:

was coercing the Plaintiff to sign the waiver to extradite to Virginia Beach on a $3.00 petit larceny offense once he opened the transport van door in the court sally-port in an anticipated predetermined scheme in collusion with these exclusive group of officials, to extradite the Plaintiff to the city of Virginia Beach, Virginia, on a 'minor nonviolent offense' that isn't extraditable west of the Mississippi river,' in an attempt to prevent Plaintiff from proceeding with his federal lawsuits against former Tulsa County

> Sherriff Stanley Glanz, (*who was ousted for criminal malvesion [sic] corrupt practices) violating federal Section (18 U.S.C. 1612).

(ECF No. 1:5). Liberally construing Plaintiff's allegations, Mr. Smith apparently believes that Defendant Durbin coerced him into signing an extradition waiver as part of a larger conspiracy with other defendants to have him extradited to Virginia. This claim should be dismissed.

In order to state a claim of a conspiracy under 42 U.S.C. § 1983, a plaintiff "must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998). *See also Cardoso v. Calbone,* 490 F.3d 1194, 1199 (10th Cir. 2007) (quoting *Tonkovich*). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994). Plaintiff's allegations do not state a claim of conspiracy under 42 U.S.C. § 1983 as he has not alleged enough facts to infer an agreement between and concerted action by any specific Defendants. Allegations that Defendant Durbin acted "in an anticipated predetermined scheme in collusion with these exclusive group of officials, to extradite the Plaintiff to the city of Virginia Beach, Virginia" are not sufficient to support a conspiracy claim. Accordingly, Plaintiff's claim of unconstitutional conspiracy asserted against Defendant Durbin should be dismissed with prejudice. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (dismissing claim of conspiracy because plaintiff "fails to allege specific facts showing agreement and concerted action among Bennett and the other defendants").

## X.     DEFENDANTS RUSSELL HALL AND LANE ELLIOT

Plaintiff appears to have two claims against Judge Hall: (1) he denied Mr. Smith bond and (2) he sent Plaintiff to the Oklahoma County Jail which he knew was "unconstitutional." (ECF No. 1:4, 7). Plaintiff alleges Judge Elliott: (1) "alter[ed] an extradition warrant in collusion with an exclusive group of officials," (2) improperly denied Plaintiff bond, (3) had knowledge of the "unconstitutional" conditions at the Oklahoma County Jail, (4) made disparaging statements against Plaintiff, (5) denied Plaintiff an attorney at the extradition hearing, and (6) failed to have the extradition hearing transcribed. (ECF No. 1:4, 7, 8).

Regarding the denial of bond, the alleged altering of an extradition warrant, the denial of counsel, and the failure to transcribe the extradition hearing, both judges are protected by absolute immunity. State court judges are absolutely immune from claims seeking monetary damages for actions taken in their judicial capacity, unless the actions are "taken in the complete absence of all jurisdiction." *Mireles v. Waco,* 502 U.S. 9, 11–12, (1991). Furthermore, "[a] judge will not be deprived of [such] immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978) (internal citation and quotation marks omitted); *see also Pierson v. Ray*, 386 U.S. 547, 553 (1967) (judges enjoy immunity "even when the judge is accused of acting maliciously and corruptly").

Here, although Mr. Smith alleges the state court judges' actions were improper, it is apparent that those actions were taken in the Defendants' judicial capacity and within their jurisdiction as judges in Oklahoma County. Therefore, these claims should be dismissed with prejudice. *See Burrows v. Cherokee County Sheriff's Office*, 38 Fed. Appx. 504, 506 (10th Cir. Mar. 19, 2002) (unpublished op.) (affirming dismissal of claims against state court judge which alleged that judge had improperly ordered plaintiff transported out of state when judge had knowledge that the case on which Plaintiff was being transported had been dismissed).

The Court should also dismiss the claims regarding both judges' knowledge of the "unconstitutional" conditions of confinement at the Oklahoma County Jail. Plaintiff does not allege that either Judge was directly involved in creating the atmosphere at the jail or otherwise responsible in a supervisory role. These allegations do not state a claim against either judge and should therefore be dismissed. *See Slusher v. Samu*, 2006 WL 3371636 (D. Colo. Nov. 21, 2006) (unpublished op.) (affirming dismissal of claim against defendants whom plaintiff alleged "had direct knowledge" of the conditions of confinement to which he was being subjected).

Plaintiff also argues that Judge Elliott is liable for making "disparaging remarks" and threats of jail time against Plaintiff. *See* ECF No. 1:4 (allegations that Judge Elliott told Plaintiff: "You'll be in jail for all of football and baseball season," and "I don't care if you rot for 12 years."). The Court should dismiss these allegations for failure to state a

claim. *See Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979) (holding that verbal abuse alone is not actionable under § 1983).

## XI.  CLAIM FOR INJUNCTIVE RELIEF

Mr. Smith seeks injunctive relief against Defendants Whetsel, Elliott, and Hall, "or any other public official who has respective jurisdiction to transport Plaintiff to an inpatient at a mental health facility to receive adequate and professional mental health care . . . [a]s well as pulling Plaintiff out of the horrifying conditions in the Oklahoma County Jail." (ECF No. 1:13).

Approximately one month after he filed the complaint, Plaintiff notified the Court that he had been transferred to the Virginia Beach Correctional Facility in Virginia Beach, Virginia, where he is apparently still housed. *See* ECF Nos. 11 & 12. As a result of the out-of-state transfer, none of the individuals against whom Mr. Smith seeks injunctive relief have jurisdiction or authority to grant him the relief he seeks. As a result, the Court should dismiss, as moot, Mr. Smith's claim for injunctive relief against Defendants Whetsel, Hall, and Elliot. *See Jordan v. Sosa*, 654 F.3d 1012, 1033 (10th Cir. 2011) (claim for injunctive relief against BOP officials was deemed moot because plaintiff was "no longer subject to their authority" and therefore, any injunctive relief granted would have no "real world" effect).

## XII.  MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff also requests appointment of counsel. (ECF No. 1:12). District courts are granted broad discretion with regard to the decision to request an attorney to represent

an indigent litigant in a civil proceeding. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991); 28 U.S.C. § 1915(e)(1). In exercising this discretion, the Court must consider a number of factors, including: (1) the merits of the litigant's claim, (2) the nature of the factual issues involved, (3) the litigant's ability to present the claims and (4) the complexity of the legal issues raised. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

The Court has considered the factors and circumstances of Plaintiff's case bearing on the need for counsel. Through his filings in this action, Plaintiff has demonstrated that he is capable of presenting his claims and arguments to the Court as pertinent to this stage in the proceedings. Therefore, Plaintiff's request for appointment of counsel should be denied without prejudice to his ability to request counsel at some later stage in these proceedings, if appropriate.

## XIII. MOTION TO ADD DEFENDANTS

Plaintiff has filed a document titled: "Supplement to Add Defendants Pursuant to Res Judicata." (ECF No. 9). In the pleading, Mr. Smith is attempting to add three defendants to the current lawsuit. The Court should deny the request. The basis of the current lawsuit revolves around Mr. Smith's arrest for public intoxication, disorderly conduct, and "defrauding an innkeeper." (ECF No. 1:2, 9). According to the motion to add Defendants, Plaintiff was prosecuted for the criminal misdemeanor of "defrauding an innkeeper" in Oklahoma County. (ECF No. 9:1). To this lawsuit, Plaintiff seeks to add

as defendants the two prosecutors and his public defender in the criminal misdemeanor action.

The motion to add the prosecutors should be denied for failure to state a claim against them. Plaintiff identifies the prosecutors as "a Caucasian and African American woman" and argues that they are conspiring with the other defendants, as evidenced by the fact that they prosecuted Mr. Smith over a "$4.00 offense" which is "grossly disproportionate" when compared to the "1.4 billion dollar shortfall" being "battl[ed]" by the State of Oklahoma. (ECF No. 9:1).

As discussed, a claim of a conspiracy under 42 U.S.C. § 1983, requires a plaintiff to "allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998). *See also Cardoso v. Calbone,* 490 F.3d 1194, 1199 (10th Cir. 2007) (quoting *Tonkovich*). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994). Plaintiff's allegations against the two prosecutors are conclusory and do not state a claim of conspiracy under 42 U.S.C. § 1983 as he has failed to allege facts to infer an agreement between and concerted action by any specific Defendants.

Mr. Smith also seeks to add his public defender, Eric Warner, as a defendant to the current lawsuit, arguing that he "testified on behalf of the district attorney's office, operating in the State's capacity." (ECF No. 9:1). The Court should deny this request because a public defender is not a "state actor" as required for relief under Section

1983 even if the attorney "may cause the trial process to deprive an accused person of his liberty interest in an unconstitutional manner." *Briscoe v. LaHue*, 460 U.S. 325, 329, n.6 (1983).

## XIV.  SUMMARY OF RECOMMENDATIONS

Upon preliminary review of Plaintiff's claims, the Court should: (1) dismiss, with prejudice, all claims against Defendants Prater and Durbin; (2) dismiss, with prejudice, any claim against Defendants Hall and Elliot for monetary damages; (3) dismiss, without prejudice, any claims against Defendants Whetsel for monetary damages and any claims against Defendant Mantle; (4) dismiss, as moot, any claim for injunctive relief against Defendants Whetsel, Hall, and Elliot; (5) deny Plaintiff's request for appointment of counsel; and (6) deny Plaintiff's motion to add Defendants. The Court should conclude that Plaintiff has stated a valid claim against Defendants Bowein and Baisden for excessive force in violation of the Fourth Amendment.

Because there is a possibility that Plaintiff may be able to cure the defects in the claims against Defendants Mantle and Whetsel, it is recommended that those dismissals be with leave to amend. In proposing dismissal with leave to amend, Plaintiff is hereby reminded of his obligations under Rule 11 of the Federal Rules of Civil Procedure.

## XV.  NOTICE OF RIGHT TO OBJECT

Plaintiff is hereby advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **July 7, 2016**. *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P.

72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## XVI.  STATUS OF THE REFERRAL

This Report and Recommendation does not dispose of all issues currently referred to the undersigned magistrate judge in the captioned matter.

ENTERED on June 21, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE